US DISTRICT COURT
for the Southern District of New York

RECEIVED
SDNY DOCKET UNIT

2018 JUL 30  AM 8: 54

```
                              )
UNITED STATES                 )
     Respondent               )
                              )
     v.                       )        Crim. No.  15-cr-288(RMB)
                              )        Civ. No. 1:18-cv-04762
ALEX CHRISTIE                 )
     Petitioner               )
                              )
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7-27-18

Memorandum of Law in Support of
Petitioner's Motion Under 28 USC §2255

NOW COMES Alex Christie, Petitioner in the above captioned matter, requesting this court vacate his sentence, vacate his conviction, and appoint new counsel in regards to further proceedings in this case.  In support of these requests, Petitioner states as follows:

<u>I - Pro Se Status</u>

Petitioner is an incarcerated pro se litigant.  "Since most pro se [litigants] lack familiarity with the formalities of pleading requirements, [a court] must construe pro se complaints liberally, applying a more flexible standard to evaluate their sufficiency."  Lerman v. Bd. of Elections, 232 F. 3d 135, 139-40 (2nd Cir, 2000).  This circuit has long held the pleadings of untrained pro se litigants to a less stringent standard than those of trained attorneys, Hughs v. Rowe, 449 US 5, 9-10 (1980), and "cognizant of the distinct disadvantage [incarcerated] pro se litigants face, federal courts routinely read their submissions liberally and interpret them to raise the strongest arguments they suggest."  Slater v. Lacapriccia, 2018 US Dist LEXIS 6687 (WDNY, 1/16/18) citing Haines v. Kerner, 404 US 519, 520 (1972) and Burgos v. Hopkins, 14 F. 3d 787, 790 (2nd cir, 1994).

Petitioner takes this opportunity to remind the court of his pro se status and requests a liberal construction of this motion "however inartfully

pleaded." Kerner, supra at 520.

## II - Factual Background:

On February 27, 2015, an anonymous tip was called-in to New York City police. The anonymous tipster said a black man wearing a yellow jacket, blue jeans and white sneakers was waving a gun around near the wake of a teenager in the Bronx. One of the officers reporting to that call was a Lt. Kenny. Driving the wrong way down a one-way street several blocks from the disturbance, Lt. Kenny approached a young black man from behind. That young black man (Petitioner) was wearing brown pants, a brown fur-lined jacket and black boots. Despite the obvious non-match of the description, Lt. Kenny turned on his emergency lights, leaped from the vehicle, drew his service weapon and shouted at Petitioner to "Get down!  Get on the ground!"

Petitioner complied and, when he saw it was Lt. Kenny, asked him "Why are you stopping me this time?" See "Attachment A". Lt. Kenny said he had gotten a report of a black man with a gun. Id. With his knee in Petitioner's back and his weapon trained on him, Lt. Kenny frisked Petitioner at least twice, searching for a weapon. None was found. Petitioner told Lt. Kenny numerous time he was unarmed and that "All I got on me is a little weed." Id. Backup officers arrived, frisked Petitioner a third time, and brought him to the local precinct under the guise of "looking up any open warrants." Id. Only after waiting several hours was Petitioner finally strip-searched, during which numerous small baggies of crack were discovered on his person. See "Attachment B."

Petitioner was ultimately charged with 1 count of conspiracy to possess with intent to distribute 280-840 grams of cocaine base (21 USC §841(a)(1)(A)), and 1 count of possession of a firearm in furtherance of a narcotics offence (18 USC §924(c)). On advice from counsel, Petitioner pled

guilty to both counts and was sentenced to an aggregate 136 months incarceration.

## III - Timeliness

A habeas corpus motion under §2255 must be filed in the district court within one year of "finality." 28 USC §2255(f)(1). "An unappealed federal criminal judgement becomes final when the time for filing a direct appeal expires." Moshier v. US, 402 F. 3d 116, 118 (2nd Cir, 2005). Under Rule 4(b)(1)(A) of the Federal Rules of Appellate Procedure, a defendant must file his notice of appeal within fourteen days of the entry of the judgement. See Knight v. US, 2017 Dist LEXIS (WDNY, 1/9/17).

Petitioner pled guilty on October 19, 2016. He was sentenced by Judge Richard Berman on May 10, 2017. Because he did not file a direct appeal, his judgement became final on May 24, 2017. This motion is timely because Petitioner placed it in the official inmate legal mail system of FCI- Fort Dix on May 21, 2018. See Houston v. Lack, 487 US 266, 271 (1988). This court received and filed Petitioner's motion on May 29, 2018 and granted Petitioner's request for additional time to file this Memorandum of Law, instructing him to file by August 5, 2018. This memorandum is similarly timely.

## IV - Legal Standards

Petitioner raises three distinct grounds for relief in this §2255 motion. First, Petitioner asserts his plea was involuntary and unknowing because his trial counsel provided deficient advice regarding his ability to challenge the firearm he allegedly possessed. Second, he argues his trial counsel was ineffective for failing to pursue a motion to suppress statements made and evidence seized during his unconstitutional arrest. Lastly, Petitioner argues counsel provided constitutionally deficient assistance because he failed to

ensure the drug weight used by the court at sentencing was accurate.  Each of these grounds has merit and requires the vacation of both the sentence and conviction of Petitioner.

A - <u>Ineffective Assistance of Counsel</u>:  The Sixth Amendment of the Constitution ensures every defendant is afforded competent, effective counsel throughout every stage in the criminal trial process.  See Aparicio v. Artuz, 269 F.3d 78, 95 (2nd Cir, 2001).  This guarantee extends to plea negotiations as well.  See Missouri v. Frye, 566 US 134, 141, 144 (2012).

Under the now familiar test of Strickland v. Washington, 466 US 668 (1984), a petitioner is obligated to satisfy two specific prongs to demonstrate the constitutionally ineffective assistance of his counsel. First, he must demonstrate that counsel's representation fell below "an objective standard of reasonableness" as gauged by "prevailing norms of practice."  Id at 693-4.  Petitioner must then "affirmatively prove prejudice" by showing there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id.

Under the first prong, courts ask whether counsel's performance was so deficient that, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance." Gonzalez v. US, 722 F. 3d 118, 130 (2nd Cir, 2013).  But such an examination is highly deferential to counsel.  Pratt v. Greiner, 306 F. 3d 1190, 1196 (2nd Cir, 2002) quoting Strickland at 689.  "The question is whether the attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington v. Richter, 562 US 86, 105 (2011).

When testing for prejudice under the second prong, a "'reasonable

probability' is evaluated based on the likelihood that, had counsel not foregone the alleged action, the trial outcome would have been different." Romero v. US, 933 F. Supp. 2d 528, 532 (SDNY, 2013) quoting Hill v. Lockhart, 474 US 52, 59-60 (1985)(internal questions omitted). Where a criminal defendant entered a plea of guilty, prejudice is shown when there is a reasonable probability the petitioner would not have plead guilty and would, instead, have proceeded to trial. Lockhart at 58. The Supreme Court has routinely upheld this principle but has recently cautioned that "courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded buit for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." Lee v. US, 137 S. Ct. 1958, 1967 (2017).

     B - Voluntary Nature of Pleas: "Waivers of constitutional rights not only must be voluntary, but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstancesand likely consequences "Brady v. US, 397 US 742, 748 (1970). "Courts have showed that a waiver is only knowing or 'informed' if the defendant 'fully understood the consequenses of the waiver'." US v. Ready, 82 F. 3d 551, 557 (2nd Cir, 1996) citing US v. Rutan, 956 F. 2d 827, 830 (8th Cir, 1991).

     More generally, courts review guilty pleas to determine whether the plea "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Hill v. Lockhart, 474 US 52, 56 (1985). A plea is "intelligent" if the defendant had effective advice from counsel and actually understood the consequences of his plea. Miller v. Angliker, 848 F. 2d 1312, 1320 (2nd Cir, 1988). A plea is "voluntary" so long as it is made free of actual or threatened physical harm, mental coercion, or his sheer inability to weigh his options rationally. Id.

"The plea process is a central part of the criminal justice system and the Sixth Amendment protects defendants against ineffective assistance of counsel at this critical stage in the proceedings." Barreras v. US, 2016 US Dist LEXIS 49283 (SDNY, 4/12/16) citing Missouri v. Frye, 132 S. Ct. at 1407. "Where a defendant enters a guilty plea upon counsel's advice, the voluntariness is dependent on whether the advice was within the range of competence demanded of attorneys in criminal cases and whether counsel's constitutionally ineffective performance affected the outcome of the plea process." US v. Graham, 2018 US Dist LEXIS 21007 (SDNY, 2/7/18) citing Hill v. Lockhart, 474 US 52, 56 & 59 (1985). "When a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, [the court does] not ask whether, had he gone to trial, the result of that trial would have been different than the result of the plea bargain... [The court] instead consider[s] whether the defendant was prejudiced by the denial of the entire judicial proceeding... to which he had a right." Lee v. US, 137 S. Ct. 1958, 1965 (2017).

### V - Argument

Petitioner's sentence and conviction must be vacated and this matter remanded for additional proceedings. His counsel rendered unconstitutional ineffectiveness by failing to move to suppress the drugs found and the statements made during Petitioner's arrest, which would have necessitated a motion to dismiss for lack of probable cause. Counsel erroneously advised Petitioner to plead guilty to the §924(c) charge, denying him the opportunity to challenge the authenticity of the "firearms." Counsel failed to ensure Petitioner was sentenced based on materially accurate information. These errors caused Petitioner to make an involuntary and unknowing plea and be sentenced based on a fundamentally inaccurate guideline range.

A - Failure to Challenge the §924(c) Count:  Count Two of the indictment charged Petitioner with possession of a firearm in furtherance of a narcotics offense.  As evidence of this offense, the government offered testimony of confidential informants who claimed to have seen Petitioner with a gun and a music video featuring Petitioner holding what they claimed was a firearm. Petitioner repeatedly denied ever possessing a firearm and said the "gun" in the rap video was only a prop, a fake gun bought specifically for the video by the production company.  See "Exhibit A."  During plea negotiations counsel told Petitioner "We can't fight the gun.  If you take this to trial, you'll only get more time."  Id.  Based on that advice, and under the erroneous belief that he could not challenge the firearm, Petitioner plead guilty to Count Two.  As he now knows, that advice from Counsel was fundamentally wrong.

In order to convict under §924(c), the government must prove that the defendant 1) possessed a firearm, 2) in furtherance of a drug trafficking crime.  See US v. Finley, 245 F. 3d 199, 203 (2nd Cir, 2001).  Possession may be established using direct or circumstantial evidence.  US v. Peyton, 159 F. 3d 49, 56 (2nd Cir, 1998).  Under federal law, a "firearm" is "any weapon... which will or is designed to or may be readily converted to expel a projectile by the action of an explosive."  18 USC §921(a)(3).  "A 'BB' or pellet gun that uses air or carbon dioxide pressure to expel a projectile is a dangerous weapon but not a firearm."  US v. Gilleo, 2016 US Dist LEXIS 30522 (SDNY, 3/9/16) citing  USSG §1B1.1 Note 1(G).

This circuit has made clear that an actual firearm need not be presented or entered into evidence to sustain a §924(c) conviction.  "Even though a gun is not recovered, eyewitness testimony may be sufficient for the government to meet its burden of proof under §921(a)(3) so long as it provides a rational basis for the jury to find that the object observed by eyewitnesses was, in

fact, a firearm." Ballard v. US, 2013 US Dist LEXIS 141031 (SDNY, 2/6/13) adopted at 2013 US Dist LEXIS 141055 (SDNY, 8/4/13) quoting US v. Jones, 16 F. 3d 487, 490 (2nd Cir, 1994). (emphasis added).

Indeed, The Second Circuit has repeatedly held that the question of whether or not an object possessed by a defendant meets the §921(a)(3) definition of a firearm is a question appropriate for a jury. See Jones, 16 F. 3d at 491. In US v. Rivera, 2015 US Dist LEXIS 50979 (EDNY, 4/17/15) the government proposed introducing video evidence (YouTube videos, rap videos, video compilations, etc.) to show the defendant possessed firearms. The defendant challenged this evidence as overly prejudicial and as free speech protected under the First Amendment. The district court ultimately allowed the videos, finding the "excerpts of videos depicting the defendants with firearms, cash, and drugs are highly probative to the weapons-related charges..." It held that the probative value of the videos outweighed the risk of unfair prejudice under Evidentiary Rule 403 and that the "defendants may offer evidence at trial... that the weapons, cash and drugs depicted [were] 'props', but that it is up to the jury to weigh this evidence and decide what is depicted."

Counsel's advice to Petitioner that he should plead guilty because he could not "fight the gun" was objectively deficient and deprived him of the "judicial proceeding... to which he had a right." Lee v. US, 137 S. Ct. 1958, 1965 (2017). In Lee, that defendant, a longtime legal resident alien living in the US, pled guilty to a crime after being assured by his attorney that the conviction would not lead to his deportation. There was "substantial and uncontroverted evidence" that Lee was very worried about being deported after 3 decades in the US and that he would not have taken the plea if he had known it would necessitate his deportation. Id at 1968-9. The Court reasoned that

even though winning at trial was a long shot, even the possibility of stopping his deportation would have been enough to reject the plea and proceed to trial.  Id at 1966.

The same occurred here.  Just like the counsel in Lee, Counsel here was fundamentally wrong about the law.  Precedent in this circuit makes clear that it is absolutely possible for a jury to weigh the evidence by raising a defense that challenges whether an object is a "firearm" under §921(a)(3).  Petitioner made it abundantly clear to counsel that the "guns" depicted in the rap video were air-powered props.  He provided counsel with a written affidavit from the producer of the video, See "Attachment B," p. 1, and receipts, Id, PP 2-4, verifying they did not satisfy the §921(a)(3) definition and, therefore, did not support conviction under §924(c).  Petitioner pled guilty to that charge only because his attorney assured him he could not challenge the fake firearms and should not go to trial.  Had Petitioner known this was possible, he would not have pled guilty and would instead have proceeded to trial.

By waiving his right to trial, the "eyewitnesses" the government claimed had seen Petitioner with a firearm went unchallenged and their veracity untested.  Counsel's deficient advice deprived Petitioner of the process by which that testimony could have been challenged and weighed by the appropriate fact finder.  Just like the erroneous advice in Lee, counsel's here was objectively deficient and deprived him of a judicial proceeding to which he had a right.  Relief on this ground is appropriate.

B - Failure to Move for Suppression:  Prior to plea negotiations, Petitioner made clear to counsel that on the night of his arrest, he was not wearing clothing that matched the anonymous tip, nor was he stopped for possession of marijuana as claimed by law enforcement.  Aware of this

information, counsel did file a motion to suppress the evidence seized and statements made during Petitioner's arrest.  A hearing date had even been set. For some bizarre reason, however, counsel persuaded Petitioner to give up on that motion and simply plead guilty.  This was objectively unreasonable, constitutionally ineffective advice.  Relief must be granted.

When a petitioner claims ineffectiveness of counsel for failing to move for suppression, he must demonstrate the underlying motion was meritorious and a reasonable probability the verdict would have been different had the evidence been suppressed.  US v. Matsos, 905 F. 2d 30, 32 (2nd Cir, 1990). Importantly, failure to make the motion is not per se ineffectiveness. Ineffectiveness is shown only when counsel neglected to investigate making the motion or to make a seasonable decision that such investigation was unnecessary.  Id at 33 citing Kimmelman v. Morrison, 477 US 365, 384-5 (1986). Here, counsel can show neither.

A warrantless arrest is valid if the law enforcement officer has probable cause to believe the individual he is arresting has committed a crime.  See Jones v. Meehan, 2018 US Dist LEXIS 7395 (SDNY, 1/16/18) citing Devenpeck v. Alfred, 543 US 146, 152 (2004).  "Probable cause exists only if that officer bases such belief on facts and circumstances which he believes to be reasonably trustworthy.  ID, quoting US v. Llanes, 398 F. 2d 880, 883 (2nd Cir, 1968).

Such facts and circumstances may be founded on anonymous tips but the reliability of those tips must be weighed using the totality of the circumstances (ie - the informant's veracity, reliability, basis of knowledge, etc.).  See Illinois v. Gates, 462 US 213, 230 (1983) "When an informant is completely anonymous... a significant amount of corroboration will be required." US v. Elmore, 482 F. 3d 172, 181 (2nd Cir, 2007).  "Anonymous

tips, without further corroboration by the police to demonstrate the tip has sufficient indicia of reliability, are insufficient to provide the reasonable suspicion necessary for a valid [arrest]." US v. Freeman, 735 F. 3d 92, 97 (2nd Cir, 2013) citing Alabama v. White, 496 US 325, 329-32 (1990).

A stop or arrest based on an anonymous tip, however, is only warranted where the tip is established to be "reliable in its assertion of illegality, not just in its tendency to identify a determinate person." Florida v. JL. 529 US 266, 272 (2000). In JL, police received an anonymous tip that a black man wearing a plaid shirt at a particular bus stop was carrying a gun. The police found the person described, frisked him, and discovered a gun on his person. On appeal, the Supreme Court held that an anonymous tip, even one eventually proven true, is an insufficient basis for a Terry stop when the tip provides no predictive information and therefore leaves the police "without means to test the informant's knowledge or credibility." Id at 271.

Similarly in US v. Freeman, supra, two anonymous calls were placed to police telling them a man had a gun. The caller refused to identify himself and simply described the person with the gun and said that person was arguing with a female. 735 F. 3d at 94. Upon arrival, officers called out to Freeman but he kept walking (not running) away until he was "bear-hugged" by an officer, tackled to the ground, handcuffed, and pat searched until a gun was discovered in his waistband. Id at 95. Freeman was convicted of being a felon in possession of a firearm, See 18 USC §922(g)(1), following a bench trial. Id at 94. On appeal, the Second Circuit reversed, finding that "the pair of anonymous calls to 911 lacked any indicia of reliability and did not provide the police with the reasonable suspicion needed to stop Freeman." Id at 98. Even though those calls provided more detailed physical descriptions and location information, the Court held the calls "[did] not alter the fact

that such details merely serve[d] to correctly identify the person the tipster

[meant] to accuse."  Id at 99 citing Florida v. JL, supra at 272.  There was

not a sufficient indicia of reliability to allow law enforcement to believe

that the person identified was committing a crime.

A similar insufficient indicia of reliability exists here.  On the night

of his arrest, an anonymous tip was phoned in to police telling them that a

black man wearing a yellow jacket, blue jeans, and white sneakers was at a

certain location waving around a gun.  Police arrived at that location to find

a crowd of people.  Ppetitioner was not a member of that crowd.  He was

several blocks away, heading toward his home.  See "Attachment A".  He was

wearing brown cargo pants, a brown fur-lined jacket, and black boots, see

"Attachment C", p.2.  None of this matched the description given by the

anonymous caller.  The police, however, approached Petitioner anyway, from

behind and in a car, (see "Attachment A") later claiming they had observed him

"possessing marijuana."  See PSR PP 51 and "Attachment C", p.1.  No firearm

was found on Petitioner's person or in his vicinity.  Marijuana was seized

from Petitioner only after he voluntarily told the police it was on his

person.  The bags of cocaine base were not recovered from Petitioner until he

was already in the police precinct.  See "Attachment A."

There are several problems of constitutional magnitude with this arrest.

First, on the basis of the anonymous tip alone, there was not sufficient

information given to believe Petitioner was committing a crime.  Like both JL

and Freeman, the tip here merely gave a vague description (black man with a

yellow jacket and white shoes) and advised that the person had a gun.

Moreover, the clothes he was wearing that night (brown clothes and black

boots) did not match the description given by the anonymous tipster.  See

Berrio v. New York, 2017 US Dist LEXIS 3759 (SDNY, 1/9/17) (The limited facts

given to police "were insufficient to support officers' probable cause to arrest plaintiff where, as here, a description could have applied to any number of persons and does not single out plaintiff as the suspect.... Assuming, alternately, the NYPD believed the assailant was wearing a hooded coat and white sneakers, these descriptions do not match plaintiff and therefore cannot bolster the reliability of vague descriptions of the suspect.") Lacking anything more, the anonymous tip alone was insufficient to support either stopping or arresting Petitioner.

Even using the less demanding "reasonable suspicion" standard required for a stop under Terry v. Ohio, 392 US 1 (1968), counsel was deficient for not conducting further investigation to challenge Petitioner's arrest. While "reasonable suspicion" is obviously a less demanding standard than "probable cause", there must still be a minimum level of objective justification for making the stop. See Illinois v. Wardlow, 528 US 119, 123 (2000). That suspicion must be "based on specific, articulate facts." Us v. Scopo, 19 F. 3d 777, 781 (2nd Cir, 1994).

Petitioner made it abundantly clear to counsel that, although he was in possession of marijuana, he was approached that night by NYPD Lt. Kenny who stated he had been told Petitioner was carrying a gun. See "Attachment A." Petitioner repeatedly told counsel that the tip about the gun was the reason he had been stopped, not because marijuana had been seen in Petitioner's possession. Approaching Petitioner from behind while inside a vehicle, Lt. Kenny could not possibly have seen him with marijuana. All of this, coupled with the obviously inaccurate and vague description given by the anonymous tipster, would have caused a reasonable practitioner to realize proceeding with the suppression hearing was appropriate to demonstrate the insufficiency of the alleged "reasonable suspicion" used by Lt. Kenny to affect the stop

that led to Petitioner's arrest.  This is constitutionally ineffective and relief must be granted.

   C - Failure to Challenge the Drug Weight Calculation:  At Sentencing, Petitioner was held accountable for 280 - 840 grams of cocaine base, see PSR ¶27, which included the approximate 10 grams found on his person the night of his arrest.  This resulted in a base offense level of 30.  See USSG §1D1.1(c). Had counsel appropriately investigated the alleged drug weight, he would have discovered that 280 grams was significantly higher than what Petitioner was actually responsible for and resulted in a substantially higher guideline range at sentencing.

   "Due process requires that a defendant not be sentenced on materially false information."  Gordon v. US, 2011 US Dist LEXIS 27592 (SDNY, 7/1/11) quoting Darden v. BOP, 707 F. Supp. 2d 363, 367 (EDNY, 2010) (internal quotations omitted).  "Materially false assumptions as to any facts relevant to sentencing render the entire sentencing procedure invalid as a violation of due process." US v. Malcom, 432 F. 2d 809, 816 (2nd Cir, 1970).  "A judge's material misapprehension of fact is ground for vacating a sentence because it may constitute a denial of due process..."  US v. McDavid, 41 F. 3d 841, 843-4 (2nd Cir, 1994) citing US v. Stein, 544 F. 2d 96, 103-4 (2nd Cir, 1976).

   Such a violation of due process can be caused by the erroneous or mistaken calculation of a defendant's guideline range.  The Supreme Court has made clear that a district court that "improperly calculates" a defendant's guideline range has committed a "significant procedural error."  Gall v. US, 552 US 38, 51 (2007).  Indeed, the Court has recognized the central role the Guidelines play in the sentencing process and held that "in most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher guideline range has demonstrated a reasonable probability

of a different outcome" of his sentencing process.  Molina-Martinez v. US, 136
S. Ct. 1338, 1346 (2016).

Here, competent investigation by counsel would have shown a fundamental
miscalculation of the base offense level which drastically altered the
guideline range applied to Petitioner.  On the night of his arrest, Petitioner
possessed 74 baggies containing a total of less than 10 grams of cocaine base.
PSR, ¶2.  Petitioner was charged with 280-840 grams of cocaine base.  Id.
Under Petitioner's written plea agreement, however, the government agreed to
accept a plea allocution for only 28 grams or more.  See PSR, ¶6, Note 2.
This did lower the applicable mandatory minimum sentence from 10 years to 5
years, see §841(b)(1)(A), but Petitioner's applicable guideline range still
reflected the drug weight associated with the amount charged in the
indictment.

The "Drug Quantity Table" found at USSG §2D1.1(c) states that 28 grams of
cocaine base results in a base offense level of 24.  280 grams or more results
in a base offense level of 30.  The record before the court at sentencing
contained no information or facts beyond Petitioner's plea agreement that
could support a finding that he was responsible for 280 grams or more of
cocaine base.  The government cited no witnesses or confidential informants
that could prove such an amount was reasonably foreseeable by Petitioner.  The
indictment did not cite any overt acts by Petitioner that supported holding
him accountable for 280 grams of cocaine base.  In fact, the Indictment
charged Petitioner with agreeing to sell an unknown quantity of marijuana for
the conspiracy, not crack.  Indeed, the record before the court is wholly
silent as to facts supporting holding Petitioner responsible for a weight of
cocaine base above what he pled guilty to, only 28 grams.

Indeed, nothing in the e-mail or written communications between counsel

and AUSA Scotten would qualify under the "preponderance of the evidence" standard to support such a drug weight. AUSA Scotten makes mention of the differing amounts of marijuana and cocaine base he wanted to assign to Petitioner, see "Attachment D", but at no point does he supply counsel with any evidence to support that weight. In fact, it seems as though counsel and AUSA Scotten mutually believed Petitioner's guilt was a foregone conclusion and merely bypassed the "adversarial process" a plaintiff deserves from his lawyer when charged with a crime.

Counsel's advice to Petitioner to accept a plea deal without such evidence is objectively unreasonable. Had Petitioner known counsel had not seen any evidence to support the drug weight, he would not have pled guilty and would have instead gone to trial.

Regardless, a drug weight of 28 grams of cocaine base yields a base offense level of 24. §2D1.1(c). Still granting the reduction for "Acceptance of Responsibility," §3E1.1(a)&(b), Petitioner's applicable guideline range would have been a level 21, reflecting an advisory 37-46 months incarceration. Had counsel made reasonable investigations, he would have discovered that there was insufficient evidence to hold Petitioner accountable for 280-840 grams of cocaine base. This makes his advice to sign the plea agreement objectively unreasonable and resulted in Petitioner being subjected to a substantially higher guideline range at sentencing. This was constitutionally ineffective and relief must be granted.

## VI - Conclusion

On the night of his arrest, law enforcement lacked reasonable suspicion to stop or probable cause to arrest Petitioner. Counsel failed to conduct any investigation into Petitioner's adamant claims that the guns he was charged with did no satisfy the statutory definition of a firearm and, therefore, did not support a conviction under §924(c). The record did not contain evidence sufficient to hold Petitioner accountable for 280 grams or more of cocaine base. Counsel's advice that Petitioner should sign and accept the plea offer was objectively unreasonable. Had Petitioner received adequate advice, he would not have accepted the plea offer and, instead, would have proceeded to trial. Petitioner's plea was unknowing and involuntary and must be vacated.

WHEREFORE the above reasons, Petitioner respectfully requests this court:

    1 - VACATE Petitioner's sentence,

    2 - VACATE Petitioner's conviction,

    3 - APPOINT new counsel, and

    4 - GRANT any and all other such relief it feels equitable and just.

Respectfully submitted,

Dated July 20, 2018

Alex Christie
Reg. No. 92476-054
FCI-Fort Dix
PO Box 2000
Joint Base MDL, NJ 08640

Certificate of Service

I, Alex Christie, do hereby certify that on this 23rd day of July, 2018 I did
serve a true and accurate copy of the attached Memorandum of Law in Support of
My §2255 Motion on Respondent at One St. Andrew's Plaza, New York, NY  10007
via the official Inmate Legal Mail system of FCI-Fort Dix, First Class US
Mail, postage pre-paid.

Alex Christie

"Attachment A"

US DISTRICT COURT
for the Southern District of New York

```
                           )
UNITED STATES              )
     Respondent            )
                           )
     v.                    )        Crim. No.  15-cr-288(RMB)
                           )        Civ. No.   1:18-cv-04762
ALEX CHRISTIE              )
     Petitioner            )
                           )
```

### Affidavit of Alex Christie

I, Alex Christie, do hereby depose and state as follows:

1 - My name is Alex Christie.  I am the Petitioner in the above captioned matter.

2 - On February 27, 2015, the night of my arrest, I was wearing brown cargo pants, a brown down jacket with a fur-lined hood, and black boots.  I was not wearing a yellow jacket or white sneakers or blue jeans.

3 - That night I was stopped by Lt. Kenny of the NYPD.  That Lt. and I has an acrimonious relationship.  For several years, that Lt. would stop me and harass me every time he saw me in the neighborhood.  That night, I assumed he was simply doing it again.

4 - Lt. Kenny pulled his gun on me and told me to "Get on the ground!"  He said "I got a call about a guy with a gun."  I told him I didn't have a gun and even lifted my shirt to prove that.  I told him all I had on me was less than an ounce of marijuana.  Lt. Kenny frisked me at least twice but found no gun and only the marijuana I showed him.  Not once did Lt. Kenny ever tell me he thought he had seen me "in possession of marijuana".  When backup police arrived, they frisked me again but didn't find anything.

5 - I was told I was being brought to the police precinct to search for any open warrants that might be open against me.  After sitting in the station for a while I was told they needed to strip search me.  It was only then that they found the baggies containing the cocaine base.

6 - When I met with my lawyer and learned I was being charged with a gun offense, I told him over and over that wasn't true.  I explained the "gun" in the video was just a prop and gave him the name and contact info of the people who produced the video and purchased the prop guns.  My lawyer never called them.

7 - When I told my lawyer I wanted to fight the gun charge, he simply told me "They got you dead to rights."  I made it clear to him I did not want to plead, but he kept telling me that "you don't want to go in front of this judge with a violent charge."  He told me again and again "Just take the time.  It gets easier later."

8 - I took the plea deal offered only because my lawyer told me I could not
    fight the gun charge and that my sentence would be much higher if I
    fought my charges at all.

9 - When I signed my plea deal, I believed I was pleading to only 28 grams of
    crack.  My lawyer never told me I would be held accountable for 280 grams
    or more.  He never showed me any kind of evidence or discovery from the
    government that proved I ever had that much crack.  If I had known that,
    I never would have signed the plea and would have gone to trial instead.


Signed under the pains and penalties of perjury.


Dated July 20, 2018

Alex Christie
Reg. No. 92476-054
FCI-Fort Dix
PO Box 2000
Joint Base MDL, NJ   08640

"Attachment B"



Dear sir or madam,

My name is Mr. Roxan Simpson and I am the Assistant Director Of Environmental services at Lincoln Medical Center in the Bronx New York. I previously held the same position at Mt. Sinai Hospital in Manhattan new York for over 15 years.

In the summer of 2012 I started a LLC / Entertainment company with my brother Raysean Simpson and one of his friends to help keep them out of trouble & Maximize their talents in the entertainment field. Which included Music, Movie making / Script writing, Dance, art & evening clothing design. We opened a studio on Barker avenue in the Bronx where we could meet and record music & make movies. For the movies I ordered 2 prop weapons from off line just for some type of realism. When the studio was closed and we were kicked out of our rented area by the landlord we lost track of these two prop weapons.

Alex Christie was one of the young members of the group of talented young men we were working with who wanted to pursue a career in music / acting. It was brought to my attention that when he got in trouble some of the evidence that was shown as reckless behavior might have been parts of movies / basic screen plays that we were developing. And one of the weapons that he was shown with was indeed one of the props and might have been part of a video series that we were posting on you tube. I believe that I still have some of the unedited video clips from some of his work. This would be terrible if this was used to give him a harsher sentence than deserved. I believe that not only is Mr. Christie talented but is young hard working and deserves a second chance to show that he can do better in life.

I was once a troubled young man myself and it wasn't until I got a second chance / new lease on life that I was able to turn it around. Please reach out to me if there is anything I can do to help with his appeal process even if I have to take the stand as a potential character witness.

Sincerely Yours
Roxan Simpson
(914) 330 - 4638

4/26/18, 11:58 PM

*Alex Christie - Legal Information*
*# 92476054*

All ▾

Browsing History

EN · Hello, Deandra

Your Account › Your Orders › Order Details

# Order Details

Ordered on February 27, 2013     Order# 111-9108118-8637030

View or Print invoice

**Shipping Address**
Roxan Simpson
40 E SIDNEY AVE APT 12A
MOUNT VERNON, NEW YORK 10550-1420
United States

**Payment Method**
VISA **** 0049

**Order Summary**

| | |
|---|---|
| Item(s) Subtotal: | $89.94 |
| Shipping & Handling: | $13.07 |
| Total before tax: | $103.01 |
| Estimated tax to be collected: | $8.62 |
| **Grand Total:** | **$111.63** |

Transactions



Soft Air Taurus PT 92 Gas Blowback Pistol (Black)
Sold by: Amazon.com Services, Inc.
$89.94
**Condition:** New

Buy it again

Write a product review

Archive order

## Items from Your List

Page 1 of 3



Deluxe 50-Pcs Disposable Drink Container Set By FroZip – Drink Pouches W/ Gusset Bottom...
186
$15.95



FroZip 125 Disposable Ice Popsicle Mold Bags 8x2" | BPA Free Freezer Tubes With Zip Seals...
291
$11.95



Tree Naturals Green Tea & Coconut Detangling Conditioner Bar- Paraben Free- Vitamin Rich-...
13
$14.99



PURELL Multi Surface Disinfectant Spray – Fragrance Free, 28 oz. Spray Bottle (Pack of...
148
$6.58

## Your recently viewed items and featured recommendations

Inspired by your purchases

*Alex Christie Legal Investigating*

**azon**.com

## Final Details for Order #111-9108118-8637030
### Print this page for your records.

**Order Placed:** February 27, 2013
**Amazon.com order number:** 111-9108118-8637030
**Order Total: $111.63**

## Shipped on February 28, 2013

| Items Ordered | Price |
|---|---|
| 1 of: *Soft Air Taurus PT 92 Gas Blowback Pistol (Black)*<br>Sold by: Amazon.com Services, Inc.<br><br>Condition: New | $89.94 |

**Shipping Address:**
Roxan Simpson
40 E SIDNEY AVE APT 12A
MOUNT VERNON, NEW YORK 10550-1420
United States

**Shipping Speed:**
Two-Day Shipping

| | |
|---|---|
| Item(s) Subtotal: | $89.94 |
| Shipping & Handling: | $13.07 |
| | ----- |
| Total before tax: | $103.01 |
| Sales Tax: | $8.62 |
| | ----- |
| **Total for This Shipment:** | **$111.63** |
| | ----- |

## Payment information

**Payment Method:**
Visa | Last digits: 0049

**Billing address**
Deandra D. Riley
300 GRAMATAN AVE APT D53
MOUNT VERNON, NY 10552-3234
United States

| | |
|---|---|
| Item(s) Subtotal: | $89.94 |
| Shipping & Handling: | $13.07 |
| | ----- |
| Total before tax: | $103.01 |
| Estimated tax to be collected: | $8.62 |
| | ----- |
| **Grand Total:** | **$111.63** |

**Credit Card transactions**       Visa ending in 0049: February 28, 2013: $111.63

To view the status of your order, return to Order Summary.

Conditions of Use | Privacy Notice © 1996-2018, Amazon.com, Inc. or its affiliates

Order Details

*Alex Christie – Legal Information Page 1 of 3
#924 76054*

4/26/18, 11:57 PM

All ▼

Browsing History

EN Hello, Deandra

Your Account › Your Orders › Order Details

# Order Details

Ordered on February 27, 2013    Order# 111-8168904-8365807

View or Print invoice

**Shipping Address**
Roxan Simpson
40 E SIDNEY AVE APT 12A
MOUNT VERNON, NEW YORK 10550-1420
United States

**Payment Method**
VISA **** 0049

**Order Summary**

| | |
|---|---|
| Item(s) Subtotal: | $139.95 |
| Shipping & Handling: | $29.26 |
| Total before tax: | $169.21 |
| Estimated tax to be collected: | $0.00 |
| **Grand Total:** | **$169.21** |

See tax and seller information

Transactions



M1911 A1 CO2 Full Metal Blowback Airsoft Pistol w/ Madbull Barrel Extension
Sold by: GPG Armory
$139.95
**Condition:** New

Buy it again

Get help with order

Return or replace items

Write a product review

Archive order

## Items from Your List

Page 1 of 3



Deluxe 50-Pcs Disposable
Drink Container Set By
FroZip – Drink Pouches W/
Gusset Bottom...
186
$15.95



FroZip 125 Disposable Ice
Popsicle Mold Bags 8x2" |
BPA Free Freezer Tubes
With Zip Seals...
291
$11.95



Tree Naturals Green Tea &
Coconut Detangling
Conditioner Bar- Paraben
Free- Vitamin Rich-...
13
$14.99

PURELL Multi Surface
Disinfectant Spray –
Fragrance Free, 28 oz.
Spray Bottle (Pack of...
148
$6.58

## Your recently viewed items and featured recommendations

Inspired by your purchases

*Alex Christie - Legal Information - page 27 of 38*

zon.com

# Final Details for Order #111-8168904-8365807
## Print this page for your records.

**Order Placed:** February 27, 2013
**Amazon.com order number:** 111-8168904-8365807
**Order Total:** $169.21

## Shipped on February 27, 2013

| Items Ordered | Price |
|---|---|
| 1 of: *M1911 A1 CO2 Full Metal Blowback Airsoft Pistol w/ Madbull Barrel Extension*<br>Sold by: GPG Armory (seller profile)<br><br>Condition: New | $139.95 |

**Shipping Address:**
*Roxan Simpson*
40 E SIDNEY AVE APT 12A
MOUNT VERNON, NEW YORK 10550-1420
United States

**Shipping Speed:**
Expedited Shipping

| | |
|---|---|
| Item(s) Subtotal: | $139.95 |
| Shipping & Handling: | $29.26 |
| | ----- |
| Total before tax: | $169.21 |
| Sales Tax: | $0.00 |
| | ----- |
| **Total for This Shipment:** | **$169.21** |
| | ----- |

## Payment information

**Payment Method:**
Visa | Last digits: 0049

**Billing address**
Deandra D. Riley
300 GRAMATAN AVE APT D53
MOUNT VERNON, NY 10552-3234
United States

| | |
|---|---|
| Item(s) Subtotal: | $139.95 |
| Shipping & Handling: | $29.26 |
| | ----- |
| Total before tax: | $169.21 |
| Estimated tax to be collected: | $0.00 |
| | ----- |
| **Grand Total:** | **$169.21** |

**Credit Card transactions**        Visa ending in 0049: February 27, 2013: $169.21

To view the status of your order, return to Order Summary.

Conditions of Use | Privacy Notice © 1996-2018, Amazon.com, Inc. or its affiliates

"Attachment C"



# New York City Police Department
## Omniform System - Arrests

| | |
|---|---|
| **RECORD STATUS: NYSID ENTERD** | **Arrest ID: B15612167 - Z** |

| | |
|---|---|
| **Arrest Location: SOUTH EAST CORNER BRUNER AVENUE & EAST 222 STREET** | **Pct: 047** |

**Arrest Date: 02-27-2015**  Processing Type: ON LINE   Current Location of Perpetrator:

**Time: 23:52:00**  DCJS Fax Number: BO008467   Borough: **Bronx**

Sector: **D**   Special Event Code: NO -   Type:

Strip Search Conducted: **NO**   DAT Number: 0   Location: **047 PRECINCT**

Viper Initiated Arrest: **NO**

Stop And Frisk: **NO**   Return Date: 0000-00-00

Serial #: 0000-000-00000

---

**COMPLAINTS:**   Arrest #: **B15612167**

| COMPLAINT NUMBER | REPORT DATE | RECORD STATUS | OCCUR DATE | OCCUR TIME |
|---|---|---|---|---|
| 2015-047-01555 | 2015-02-28 | Valid, Initial Arrests made | 2015-02-27 | 23:35 |

---

**CHARGES:**   Arrest #: **B15612167**

| CHARGE | ATTEMPT? | LAW CODE | CLASS | TYPE | COUNTS | DESCRIPTION |
|---|---|---|---|---|---|---|
| TOP | No | PL 220.16 01 | F | B | 1 | CPCS-3RD:NARC DRUG INT/SELL |
| #02 | No | PL 221.10 01 | M | B | 1 | CRIM POSS MARIHUANA-5TH:PUBLIC |
| #03 | No | PL 221.05 | V | 0 | 1 | UNLAWFUL POSSESSION MARIHUANA |

| DWI Arrest from: | # Injured: 00 | # Fatalities: 00 | Test Given: | B.A.C: | Reason Not Forfeit: |
|---|---|---|---|---|---|

---

**DETAILS:**   Arrest #: **B15612167**

AT TPO DEFT WAS OBSERVED BY LT KENNY TAX# 921461, IN POSSESSION OF MARIJUANA IN PUBLIC VIEW. SILA DEFT DID ALSO HAVE IN HIS POSSESSION 74 CLEAR TIE BAGGIES OF ALLEGED CRACK COCAINE

---

**DEFENDANT: CHRISTIE, ALEX**   NYSID #: 05937388H   Arrest #: **B15612167**

Nick/AKA/Maiden:   Height: **6FT 2IN**   Order Of Protection: **NO**

Sex: **MALE**   Weight: **180**   Issuing Court:

Race: **BLACK**   Eye Color: **BROWN**   Docket #:

Age: **22**   Hair Color: **BLACK**   Expiration Date:

Date Of Birth: **07/14/1992**   Hair Length: **LONG**   Relation to Victim: **STRANGER**

U.S. Citizen: **YES**   Hair Style: **BRAIDS**   Living together: **NO**

Place Of Birth:   Skin Tone: **DARK**   Can be Identified: **YES**

Is this person not Proficient in English?: **NO**   Complexion: **CLEAR**

If Yes, Indicate Language:

Accent: **NO**   Soc.Security #:

Occupation: **UNKNOWN**   Gang/Crew Affiliation: **NO**

Identification ID:   Name:

Identification #:   Identifiers:

Physical Condition: **APPARENTLY NORMAL**   Lic/Permit Type:

Drug Used: **NONE**   Lic/Permit No:

| LOCATION | ADDRESS | CITY | STATE/CNTRY | ZIP | APT/ROOM | PCT |
|---|---|---|---|---|---|---|
| HOME-PERMANENT | 3350 BRUNER AVENUE | BRONX | NEW YORK | 10469 | A2 | 047 |

Phone # and E-Mail Address:

N.Y.C.H.A. Resident: **NO**  N.Y.C. Housing Employee: **NO** On Duty:

Development:   N.Y.C. Transit Employee: **NO**

**Physical Force: NONE**

Used Transit System: **NO**

Station Entered:

Time Entered:

Metro Card Type:

Metro Card Used/Poses:

Card #:

| CRIME DATA | DETAILS |
|---|---|
| MODUS OPERANDI | UNKNOWN |
| ACTIONS TOWARD VICTIM | UNK |
| CLOTHING | FOOTWEAR - WORK BOOTS - BLACK |
| CLOTHING | ACCESSORIES - JEANS - TAN |
| CLOTHING | OUTERWEAR - SPORT / DRESS JACKET - BROWN |
| CLOTHING | HEADGEAR - UNK - UNKNOWN COLOR |
| CHARACTERISTICS | UNKNOWN |
| BODY MARKS | -UNKNOWN |
| BODY MARKS | -UNKNOWN |
| IMPERSONATION | UNKNOWN |

## JUVENILE DATA: Arrest #: B15612167

| | | |
|---|---|---|
| Juvenile Offender: | Relative Notified: | Personal Recog: |
| Number Of Priors: **0** | Name: | |
| School Attending: | Phone Called: | |
| Mother's Maiden Name: | Time Notified: | |

## ASSOCIATED ARRESTS: Arrest #: B15612167

ARREST ID   COMPLAINT #

## No Vehicles for Arrest #

## DEFENDANTS CALLS: Arrest #: B15612167

| CALL # | NUMBER DIALED | NAME CALLED |
|---|---|---|
| 1 | 347-449-2048 | MCPHERESON,KAREN |

## INVOICES: Arrest #: B15612167

INVOICE#   COMMAND   PROPERTY TYPE   VALUE

## ARRESTING OFFICER: POF FRANCINE DELVALLE      Arrest #: B15612167

| | | |
|---|---|---|
| Tax Number: **955874** | On Duty: **YES** | |
| Other ID (non-NYPD): **955874** | In Uniform: **YES** | **Force Used: NO** |
| Shield: **14094** | Squad: **E1** | Type: |
| Department: **NYPD** | Chart: **97** | Reason: |
| Command: **047** | Primary Assignment: | Officer Injured: **NO** |

| Arresting Officer Name:<br>**POF DELVALLE, FRANCINE** | Tax #:<br>955874 | Command:<br>047 | Agency:<br>NYPD |
|---|---|---|---|
| Supervisor Approving:<br>**LT KENNY KEVIN** | Tax #:<br>921461 | Command:<br>047 | Agency:<br>NYPD |
| Report Entered by:<br>**POF DELVALLE, FRAN** | Tax #:<br>955874 | Command:<br>047 | Agency:<br>NYPD |

### END OF ARREST REPORT
B15612167

Print this Report

"Attachment D"

**From:** **Scotten, Hagan (USANYS)** Hagan.Scotten@usa.doj.gov
**Subject:** RE: Would you agree with the following?
**Date:** April 26, 2017 at 3:04 PM
**To:** Cesar de Castro cdecastro@cdecastrolaw.com

I don't know that I'd be comfortable characterizing the division between how much crack he sold and how much weed he sold; our information mostly pertains to crack but that's also what we focused on investigating.   We would agree that he was a retail dealer, not a supplier, and so the amounts he sold were lower level than the suppliers in the conspiracy.   Christie was one of the more prominent, and violent, members of the conspiracy, but he was not a leader, manager, or supervisor within the meaning of the Guidelines.

**From:** Cesar de Castro [mailto:cdecastro@cdecastrolaw.com]
**Sent:** Wednesday, April 26, 2017 2:57 PM
**To:** Scotten, Hagan (USANYS) <HScotten@usa.doj.gov>
**Subject:** Would you agree with the following?

I expect that the government will concede that Mr. Christie was a relatively low-level drug seller.  He mostly sold marijuana, however, he has admitted to also agreeing to sell crack-cocaine as well.  Mr. Christie was not a leader, manager, or supervisor in the conspiracy.

César de Castro
The Law Firm of César de Castro
7 World Trade Center
250 Greenwich Street, 34th Floor
New York, New York 10007
646.200.6166 (direct)
212.805.8100 (reception)
646.285.2077 (mobile)
646.839.2682 (fax)
cdecastrolaw.com

This communication (including any attachments) may contain privileged or
confidential information intended for a specific individual and purpose, and is
protected by law.  If you are not the intended recipient, you should delete this
communication and/or shred the materials and any attachments and are hereby notified that
any disclosure,
copying, or distribution of this communication, or the taking of any action based on it, is
strictly prohibited.

On Jul 26, 2016, at 12:51 PM, Scotten, Hagan (USANYS) <Hagan.Scotten@usdoj.gov>
wrote:

Just finished discussing it with the chiefs and they said no.  So the you can tell
Christie that the best offer we are willing to recommend remains 10 years, and
that the willingness to do that ends if we reach Thursday's conference without an
agreement.  Hope that helps and thanks.

**From:** CdC Law [mailto:cdecastro@cdecastrolaw.com]
**Sent:** Tuesday, July 26, 2016 8:29 AM
**To:** Scotten, Hagan (USANYS)
**Subject:** Re: Christie

Okay, can you run it by your Chiefs and then I can go see him again today to
hopefully get an answer?

César de Castro
7 World Trade Center
250 Greenwich Street, 34th Floor
New York, New York 10007
646.200.6166 (main)
646.285.2077 (mobile)
646.839.2682 (fax)
cdecastrolaw.com

This communication (including any attachments) may contain privileged or
confidential information intended for a specific individual and purpose, and is
protected by law.  If you are not the intended recipient, you should delete this
communication and/or shred the materials and any attachments and are hereby
notified that any disclosure,
copying, or distribution of this communication, or the taking of any action
based on it, is strictly prohibited.

On Jul 25, 2016, at 5:13 PM, Scotten, Hagan (USANYS)
<Hagan.Scotten@usdoj.gov> wrote:

I'm not willing to recommend anything without the b1b and the
924c.  If you want, I will ask my chiefs if they disagree with me, but
they've recently said no to essentially the same request for another
defendant.

If we can reach an agreement before Thursday, I'd recommend
attributing only 28-110 grams to him.  Assuming he's criminal history
category I, which I believe he is, that puts his guidelines at exactly 10
years (his guidelines would be lower than ten years without the man
mins, so his guidelines become exactly the mandatory minimum).

From: CdC Law [mailto:cdecastro@cdecastrolaw.com]
Sent: Monday, July 25, 2016 4:58 PM
To: Scotten, Hagan (USANYS)
Subject: Re: Christie

I have spoken to him. He is not there yet on a plea but we are not far apart. He is really looking for the possibility of a sentence in the 7 year range. I know I have asked before, but what about a slight twist, a (b)(1)(B) with a gun enhancement and I won't argue for anything less than 84 months?

Maybe it will help if you can tell me where you are on his Guidelines range — what drug amount would you attribute to him?

César de Castro
7 World Trade Center
250 Greenwich Street, 34th Floor
New York, New York 10007
646.200.6166 (main)
646.285.2077 (mobile)
646.839.2682 (fax)
cdecastrolaw.com

This communication (including any attachments) may contain privileged or
confidential information intended for a specific individual and purpose, and is
protected by law. If you are not the intended recipient, you should delete this
communication and/or shred the materials and any attachments and are hereby notified that any disclosure,
copying, or distribution of this communication, or the taking of any action based on it, is strictly prohibited.


On Jul 21, 2016, at 1:04 PM, Scotten, Hagan (USANYS) <Hagan.Scotten@usdoj.gov> wrote:

Cesar,

How is Christie's decision-making going? Just to confirm, after next week's conference I will no longer be willing to recommend a plea agreement along the lines we discussed. I should also inform you that I'm considering superseding with brandishing and discharge

as to the firearm, though will of course hold off until
after the conference as we discussed.

Thanks,

Hagan

July 23, 2018

RECEIVED
SDNY DOCKET UNIT

2018 JUL 30  AM 8: 47

US District Court
Office of the Clerk
500 Pearl St.
Room 120
New York, NY  10007

RE:  US v. CHRISTIE
     Case No. 1:15-CR-00288-010

To whom it may concern,

     I hope this finds you well.  Enclosed, please find my Memorandum of Law
in Support of my Motion under §2255 in the above referenced matter.  Please
docket and file in your usual manner.  This was mailed to you, and a copy
mailed to the office of the US Attorney, via the official inmate legal mail
system of FCI-Fort Dix, postage pre-paid.

     Please direct all correspondence related to this matter to me at the
address below.  Thank you for your prompt attention.

                              Respectfully,


                              Alex Christie
                              Reg. No. 92476-054
                              FCI-Fort Dix
                              PO Box 2000
                              Joint Base MDL, NJ  08640

RECEIVED
SDNY DOCKET UNIT

2018 JUL 30  AM 8:47

Alex Christie  92476-054
Federal Correctional Institute
PO Box 2000
Joint Base MDL, NJ  08640

US District Court
Office of the Clerk
500 Pearl St.
Room 120
New York, NY  10007-1312







RECEIVED
SDNY DOCKET UNIT
2018 JUL 30  AM 8: 48

RIEP · 170682F